# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| HELEN D. COOK | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § NO. 3:06-CV-1881-L |
| | § |
| MICHAEL J. ASTRUE, | § |
| Commissioner of Social Security, | § |
| | § |
| Defendant. | § |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on March 7, 2007. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On January 12, 2004, plaintiff Helen Cook filed an application for disability insurance benefits, claiming disability due to complications from a left hip fracture. (Administrative Record (hereinafter "Tr.") at 86). On January 20, 2004 she also submitted a claim for Supplemental Security Income ("SSI") payments. (Tr. at 405). Plaintiff alleged a disability onset date of November 16, 2003. (Tr. at 86, 405).

The Administrative Law Judge ("ALJ") conducted a hearing on April 11, 2005 at which Cook appeared with her counsel. She testified on her own behalf and the ALJ also received testimony from a medical expert ("ME"), Dr. Sterling E. Moore, and a vocational expert ("VE"), Russell B. Bowden. (Tr. at 435-478). On June 22, 2005, the ALJ denied Plaintiff's request for benefits, finding that she was not disabled because she retained the capacity for work that exists

in significant numbers in the national economy. (Tr. at 17-25).

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on July 7, 2006, the Appeals Council denied her request. (Tr. at 4). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed her federal complaint on October 13, 2006. Defendant filed an answer on March 6, 2007. On July 16, 2007, Plaintiff filed her brief, followed by Defendant's brief on September 12, 2007 and Plaintiff's reply brief on October 18, 2007.

<u>Standard of Review - Social Security Claims</u>: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F. 2d 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

<u>Discussion</u>: To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that he or she is disabled, defined as "the inability to do any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505; 416.905(a). Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510; 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §404.1520; 416.920. Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, the ALJ proceeded to step five, finding that there are jobs that exist in significant numbers in the national economy that the claimant can perform, relying on the testimony of a vocational expert and a medical expert. (Tr. at 17-25). He, therefore, denied Plaintiff's request for benefits. (Tr. at 25).

Plaintiff presents two main arguments. She first argues that the ALJ failed to apply the appropriate legal standards in considering a physical residual functional capacity questionnaire

submitted by Dr. Sonia Kakkar from Parkland Hospital. Second, Plaintiff argues that the ALJ's finding that she retains the residual functional capacity to perform a significant number of available jobs is not supported by substantial evidence.

Ms. Cook's first issue focuses on a residual functional capacity ("RFC") questionnaire submitted by Dr. Sonia Kakkar, a physician with Parkland Hospital, dated February 7, 2005. (Tr. at 247-250). Specifically at issue is Dr. Kakkar's opinion that Plaintiff could remain seated continuously for no longer than one hour and for a total of about four hours during an eight-hour workday. (Tr. at 248-249).

Based upon his review of Plaintiff's medical records, Dr. Moore, the ME, was asked to provide his expert opinion on the stand/sit limitations set out in Dr. Kakkar's RFC. He stated that these limitations were not well documented, noting *inter alia* that the RFC questionnaire reported Plaintiff was being seen for low back pain, urine incontinence and occasional dizziness, that the most recent medical records relating to her hip injury were from August 2004 and that Dr. Kakkar's findings were inconsistent with what he knew. (Tr. at 458-59).[1] When asked to express his own opinion with respect to Plaintiff's stand/sit limitations, Dr. Moore testified that Plaintiff would be able to sit for six hours out of an eight hour work day.

With respect to Dr. Kakkar's report, the ALJ concluded:

> The undersigned notes the medical source statement by one of the
> Parkland Hospital doctors dated February 7, 2005. This statement
> reflects that the claimant's impairments were status post left femur
> fracture and urinary infection. However, the symptoms were listed

---

[1] Dr. Moore was in attendance throughout Ms. Cook's testimony which itself was inconsistent with a number of Dr. Kakkar's answers in the RFC questionnaire. For example, Plaintiff testified that she could sit for up to one and a half hours without interruption or even up to two hours in a comfortable chair (Tr. at 450), and that she could stand for up to two hours with the use of a cane and 30 minutes to an hour without the cane. (Tr. at 451-52).

>as low back pain, urinary incontinence and occasional dizziness.
>Limits were placed on her ability to sit [sic] no evidence was cited
>to support this limitation. As was noted by the medical expert this
>assessment is inconsistent with the medical evidence of record and
>is not well supported. As the assessment is inconsistent with the
>objective medical evidence, it is give [sic] weight only to the
>extent that it is consistent with a residual functional capacity for
>sedentary work activity.

(Tr. at 22). The ALJ concluded that Plaintiff maintains the residual functional capacity to perform sedentary work, which includes sitting for six hours out of an eight hour workday with a sit/stand option. (Tr. at 22).

Plaintiff argues that Dr. Sonia Kakkar was a "treating physician" and that the ALJ erred in not adopting Dr. Kakkar's assessment of Plaintiff's functional capacity for sitting. On the other hand the Commissioner asserts in his brief that Dr. Kakkar was not a "treating physician." This contention is without merit.

Although Dr. Kakkar was not involved in Plaintiff's initial treatment and follow-up care for her pelvic fracture, the administrative record reflects that she was affiliated with Parkland Hospital's Family Medicine Clinic (Tr. at 250) and had seen Ms. Cook at least twice and possibly three times.[2] Additionally, the medications which Plaintiff was taking at the time of the hearing had been prescribed by Dr. Kakkar. (Tr. at 458). Finally, as pointed out by Ms. Cook, the ALJ explicitly cited SSR 96-2p in determining the weight to be given to Dr. Kakkar's RFC evaluation (Tr. at 21-22), the Social Security ruling relating to reports of a "treating physician." This ruling in turn cites 20 C.F.R. §§ 404.1527 and 416.927, identifying the factors to be considered when an ALJ determines that the opinion of a treating physician is not entitled to

---

[2] *See* Tr. at 247. Plaintiff testified that she had seen Dr. Kakkar in the month prior to the April 11, 2005 hearing (Id. at 443).

"controlling weight."

Plaintiff argues that the ALJ failed to consider the § 404.1527(d)(2) factors as required by SSR 96-2p and the law of this circuit. *See Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).[3] She argues that the absence of an assessment of each factor listed constitutes a legal error which requires rejection of the decision that she was not disabled. With respect to the reported decisions of the Fifth Circuit which are precedential, I have located none which requires an explicit discussion of each of the § 404.1527(d) factors in an ALJ's decision.

Although the ALJ did not categorically list and address the factors in his decision (Tr. at 21-22), his findings address "(3) the nature of the treatment relationship" – the symptoms were listed as low back pain, urinary incontinence and occasional dizziness, "(4) the support of the physician's opinion afforded by the medical evidence of record and (5) the consistency of the opinion with the record as a whole." The absence of medical records relating to any limitations on Plaintiff's sitting, the testimony of the ME and that of Plaintiff herself provide a basis for rejecting Dr. Kakkar's RFC evaluation. *See, e.g., Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999); *see also Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (rejecting an "isolated, conclusory statement" of a treating physician when considered in conjunction with other opinions, objective medical evidence and

---

[3]The court in *Newton* noted and held as follows:

> Several federal courts have concluded that an ALJ is required to consider each of the § 404.1527(d) factors when the ALJ intends to reject or give little weight to a treating specialist's opinion. This court now similarly holds that an ALJ is required to consider each of the § 404.1527(d) factors before deciding to give any weight to the opinions of the claimant's treating specialist.

*Newton*, 209 F.3d at 456.

claimant's own testimony).

Dr. Kakkar's RFC reflected that Plaintiff was seen every three months at the clinic since approximately September 2004, after her last appointment relating to her pelvic injury. (Tr. at 247). There is nothing else in the record with respect to factor (1), length of treatment, or factor (2), the frequency of the doctor's examination. Finally, the record is silent with respect to the doctor's area of specialization, if any, or how long she had held an M.D. degree. *See* factor (6).

Under the foregoing facts and circumstances, there is substantial evidence supporting the ALJ's rejection of Dr. Kakkar's RFC.

Plaintiff also argues that the ALJ presented a defective hypothetical to the VE that did not take into account Plaintiff's standing/walking restrictions. The ALJ's hypothetical to the VE asked the VE to assume that Plaintiff could stand and walk two to four hours out of an eight hour workday. (Tr. at 473). Plaintiff argues that the ALJ's hypothetical was defective because the ALJ actually held in his decision that Plaintiff could stand or walk two hours out of eight as opposed to up to four as stated in the hypothetical. (Tr. at 22). However, in response to the hypothetical the VE identified only sedentary jobs (Tr. at 474), which by definition require an individual to stand only up to two hours out of an eight hour workday. *See* SSR 96-9p ("Jobs are sedentary if walking and standing are required occasionally" and those activities "would generally total no more than about 2 hours out of an 8-hour workday"). Therefore, Plaintiff suffered no prejudice as a result of the ALJ's presentation of the two to four hour range in the hypothetical. *See, e.g., Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir.2000) (holding that the decision of the ALJ will not be reversed for failure to "fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure"); *Mays v. Bowen*, 837

7

F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").

Plaintiff finally argues that the ALJ failed to consider that Plaintiff must use a cane to ambulate and that the ALJ's conclusion that Plaintiff retains the capacity to perform certain identified sedentary jobs is not supported by substantial evidence. Plaintiff argues that the ALJ's finding that Plaintiff could perform clerical positions is not supported by substantial evidence and the court agrees. Plaintiff testified that she must hold her cane with her dominant hand and the VE testified that Plaintiff would not be able to perform clerical positions in light of that fact. (Tr. at 475-76). Despite this testimony, the ALJ concluded that Plaintiff could perform the clerical positions of telephone clerk and addressing clerk and that "[t]hese jobs can be done by someone who uses a cane." (Tr. at 23). The Commissioner does not dispute that the ALJ erred in finding that Plaintiff could perform these positions. The ALJ's decision that Plaintiff could perform these clerical jobs is not supported by substantial evidence.

Despite the ALJ's error with respect to the clerical positions identified in his decision, he identified other sedentary jobs which the Plaintiff could perform, namely lens inspector, DOT no. 716.687-030[4] (called a "Lens-Block Gauger" in the Dictionary of Occupational Titles), and film inspector, DOT no. 726.684-050, (Tr. at 23) both of which are unskilled, sedentary positions. *See* Dictionary of Occupational Titles 716.687-030 and 726.684-050. The VE

---

[4]The hearing transcript indicates that the VE identified the lens inspector position as DOT number 716687020, which does not correspond to any DOT listing. (Tr. at 474). However, the ALJ identified DOT 716.687-030 in his decision, which corresponds to a "Lens-Block Gauger," a position that "[e]xamines blocked lens to determine whether lens blanks are positioned evenly on block, using template . . ." Dictionary of Occupational Titles 716.687-030.

testified that the category of jobs including these jobs, which he categorized as "Quality Control" occupations, primarily involve visually inspecting parts for discoloration, weight and manufacturing defects and account for 80,000 jobs in the United States, 8,000 jobs in Texas and approximately 2,000 jobs in the Dallas metropolitan area. (Tr. at 474). The VE further testified that Plaintiff could perform these jobs while using a cane. (Tr. at 475-76). The record reflects an adequate basis for the ALJ to rely on this testimony by the VE in determining Plaintiff's ability to perform these positions and in concluding that Plaintiff is not disabled because she "is capable of making an adjustment to work that exists in significant numbers in the national economy." (Tr. at 23). Therefore, substantial evidence supports the ALJ's decision and Plaintiff's request for remand must be denied.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 11th day of December, 2007.

_____
Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE

NOTICE
In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.